UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAYVON HARDIN, | Case No. 24-cv-09411-EMC |
| Plaintiff, | |
| v. | **ORDER RE JOINT DISCOVERY LETTER BRIEF** |
| CITY OF RICHMOND, et al., | |
| Defendants. | Docket No. 59 |

## I.    INTRODUCTION

Plaintiff Trayvon Hardin brings this Section 1983 action arising from a traffic stop in 2024 in Richmond, California.  First amended Complaint ("FAC") (Dkt. 40).  Hardin alleges that Officers Salala and Charles forcibly removed Hardin from a car and slammed him to the ground, causing injury to his shoulder.  *Id.* ¶ 36.  Hardin also alleges that other officers were present and should have intervened to prevent the escalation by Officers Salala and Charles.  *Id.* ¶ 39.  Hardin asserts claims for excessive force, unlawful detention and arrest, *Monell* liability, and failure to intervene, among others.  *Id.* ¶¶ 78–181.  The *Monell* theory rests on an alleged pattern of excessive force by Richmond Police Department ("RPD") officers, the City's failure to discipline or re-train offending officers, and ratification of unconstitutional conduct.  *Id.* ¶¶ 112–57.

The parties submitted a Joint Discovery Letter Brief on May 4, 2026, raising two disputes needing resolution following an unsuccessful in-person meet and confer.  Joint Discovery Letter Brief (Dkt. 59).

## II.    DISCUSSION

A.    <u>Dispute #1: Deficient Responses to Requests for Production</u>

Hardin served RFPs requesting internal affairs records, as well as (1) training materials on

use of force, de-escalation, and duty to intervene for the involved officers over a five-year period; (2) use-of-force statistical data and early warning/intervention system records for Officers Salala and Charles (the officers most involved in the incident); and (3) responsive policy and *Monell*-related documents reflecting the City's knowledge, training, and supervision practices "relevant to the claims in the FAC." Joint Discovery Letter Brief at 1. Critically, Defendants "agree that some of the requested records are relevant and will produce such records upon entry of a Court order," but argue that the three categories of documents exceed the relevant scope of discovery. The City represents that, upon Court order, it will "produce internal affairs materials, if any exist, reflecting *sustained* findings of excessive force involving the two primary officers (Defendants and Officers Jose Salala and Jarred Charles) for the five-year period preceding the incident, along with their training and qualification records. The City will also agree to produce internal affairs materials, if any exist, reflecting *sustained* findings of failure to intervene involving any officers who were present for the subject use of force as against Plaintiff, for the five-year period preceding the incident." *Id.* at 3 (emphases added).

Hardin alleges that Defendants' responses to his first set of requests for production ("RFP") "consist almost entirely of boilerplate objections" in violation of Federal Rule of Civil Procedure 34(b)(2)(B)–(C) and the Court's Standing Order § 2(a). Joint Discovery Letter Brief at 1. Defendants allegedly refuse to state what they will produce, what they are withholding, or specific grounds for withholding. *Id.* Defendants do not dispute that they failed to properly object pursuant to the Federal Rules of Civil Procedure and the Court's Standing Order, which require a responding party to affirmatively state in a written response the full extent to which it will produce materials and to specify the basis for any withholding.

Instead, Defendants principally argue in the Joint Discovery Letter Brief that Hardin's requests are overbroad and disproportionate because they seek records that "are not limited to sustained findings, similar factual circumstances, or even comparable levels of force." *Id.* at 2. Defendants also contend that compliance would require a burdensome review of RPD records and transform the case into an audit of the RPD, that the requests "implicate significant privacy and law enforcement interests," and that federal information privilege applies. *Id.* at 2–3. The City

has agreed, but only upon entry of a Court order, to produce internal affairs materials reflecting only *sustained* findings of excessive force and failure to intervene involving the officers present at Hardin's arrest for the five-year period preceding the incident, along with their training and qualification records.

Hardin alleges that officers used excessive force during a traffic stop, specifically by forcibly removing him from a vehicle and "slam[ing] him face-down to the ground with significant force." FAC ¶ 84. The scope of permissible discovery must be calibrated to the conduct actually alleged. *See Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). Defendants argue that the RFPs "have no factual or legal nexus to this case" because the RFPs seek "(1) extensive records related to 'positional asphyxia' and 'prone restraint' . . . (2) documents related to 'Sergeant Jenkins,' 'Chief Magnus,' and 'Jerry Threet' . . . who have no involvement in this matter whatsoever; and (3) records related to prior incidents which bear no factual or legal similarity to this action, including incidents involving 'Uriah Dach,' 'Alan Arce,' . . . 'Ivan Gutzalenko,' . . . and 'Kwesi Guss.'" *Id.* at 2. Defendants are correct that the scope of permissible discovery is shaped by the FAC's allegations and their similarity to other incidents. But Defendants' proposal of allowing discovery only of sustained findings of misconduct involving the named defendant officers is excessively narrow.

Records of prior use-of-force incidents are discoverable for *Monell* purposes, but there must be similarity between the prior incidents and the alleged violation. *See Hunter*, 652 F.3d at 1233 (requiring similarity between prior incidents and alleged violation for *Monell* liability). The operative anchor here is excessive or disproportionate use of force during stops, including but not limited to forcible removal from vehicles, ground takedowns, and use of force against non-resisting or minimally-resisting individuals. Prior complaint and internal affairs records fitting within that definition are within the scope of discovery. *See, e.g.*, *Davis v. Mason Cnty.*, 927 F.2d 1473, 1479 (9th Cir. 1991) ("[E]vidence of the series of incidents of excessive force involving different police officers . . . [was] admissible against the County and the Sheriff's Department in order to show a pattern of misconduct."); *Corona v. City of Fontana*, 2023 WL 9596831, at *5 (C.D. Cal. Apr. 27, 2023) ("Similarly, prior complaints of bad conduct and investigations may be

relevant under Fed. R. Civ. P. 26(b)(1) and discoverable in federal civil rights cases alleging municipal liability.").

The FAC does not, however, allege that Hardin was subject to prone restraint or positional asphyxia. It alleges that Hardin was forcefully removed from a vehicle and pushed to the ground, which is a factually distinct circumstance from the prolonged application of body weight or restraint. Records pertaining to officers' actual use of prone restraint or positional asphyxia in other instances are not sufficiently similar to the conduct alleged here to warrant production. Certain training materials remain within the scope of discovery, namely those bearing on the conduct actually alleged — in this case, de-escalation, use of force during stops, and ground takedown and restraint techniques. Training on these topics is directly relevant to the conduct at issue and a failure-to-train *Monell* theory. Training materials specific to positional asphyxia or prone restraint are outside the scope of permissible discovery in this case since there is no such action allegedly taken by the officers herein.

With respect to documents related to Sergeant Jenkins and Chief Magnus, the FAC only references Jenkins and Magnus are cited for in connection with their 2011 deposition testimony regarding RPD's awareness of positional asphyxia hazards and the Department's alleged failure to develop policies and training on positional asphyxia. FAC ¶¶ 64–65, 135–36. Because positional asphyxia training is not sufficiently connected to the conduct alleged here, there is no sufficient basis to order discovery as to Jenkins and Magnus at this stage. Plaintiff may renew this request with a more particularized showing of how records pertaining to Jenkins and Magnus bear on the use-of-force or supervision of the particular conduct at issue in this action. With respect to Jerry Threet, the FAC does not cite Threet in connection with asphyxia training. Instead, Threet is cited as the former lead investigator of the Richmond Community Police Review Commission ("CPRC"), who resigned in September 2024 on the grounds that commissioners "ignore evidence." FAC ¶¶ 70–71, 150. That allegation goes to the City's alleged systemic failure to investigate and respond to officer misconduct, which bears on the ratification theory underlying Plaintiff's *Monell* claim. Accordingly, discovery is appropriate as to the records bearing on Threet's role with the CPRC and the Commission's handling of complaints or investigations

United States District Court
Northern District of California

involving use of force during stops like that alleged in this action.  It may also bear on the probative value of the CPRC to sustain a charge of excessive force should there be any such admissible evidence as discussed below.

With regard to the City's offer to limit production to *sustained* findings of misconduct, this limitation does not appear to be based in any applicable legal standard, and the Court therefore rejects it.  Complaints that have not been internally sustained and incident investigations are generally discoverable as potentially probative to state of mind, training, credibility, and possibly under Federal Rule of Evidence 404(b).  *See, e.g.*, *Soto v. City of Concord*, 162 F.R.D. 603, 621 (N.D. Cal. 1995) (allowing discovery of records of complaints against defendant officers despite efforts by defendants to limit production to sustained findings of misconduct); *Gross v. Lunduski*, 304 F.R.D. 136, 145–46 (W.D.N.Y. 2014) (holding that complaints of excessive force both *before* and *after* the incident described in a complaint are discoverable and that no civil judgment, administrative finding, or preliminary judicial finding is required before specific acts of misconduct may be introduced as extrinsic evidence).  And discoverability is not synonymous with admissibility.  Potential exclusion under FRE 403 does not preclude discoverability under Rule 26.

Under Federal Rule of Civil Procedure 26(b)(1), discovery extends to nonprivileged materials that are "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The information sought here, including training materials, use-of-force data, complaint records, and policy documents bearing on the RPD's knowledge and supervision practices, is relevant to the FAC's claims, including excessive force, failure to intervene, and *Monell* liability based on an alleged pattern of misconduct and failure to train.  The Rule 26 proportionality requirement is satisfied where, as here, discovery is limited to the specific categories of alleged conduct, the information is unlikely to be obtainable by other means, and any burden on the producing party is mitigated by the availability of an existing protective order.  *See Randolph v. City of E. Palo Alto*, 2007 WL 4170093, at *3 (N.D. Cal. Nov. 20, 2007) (finding in § 1983 excessive force action that plaintiff's need for officer personnel records and training materials outweighed privacy interests in part because such information is unlikely to be

discovered through other means) (citing *Megargee v. Wittman*, 2007 WL 2462097, at \*2 (E.D. Cal. Aug. 27, 2007)); *see also Llera v. Tech Mahindra (Americas) Inc.*, 2021 WL 2400752, at \*2 (W.D. Wash. June 11, 2021) (compelling production of prior misconduct complaints in civil rights action where requests were limited by time and subject matter and defendant failed to articulate specific reasons why requests were disproportionate); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309–10 (D. Nev. 2019) (applying Rule 26(b)(1), as amended, and holding that the party opposing discovery bears the burden of specifically detailing why each request is disproportionate or irrelevant).

Regarding the federal official information privilege, personnel files are considered official information. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990). As a threshold matter, Defendants' citation to California Penal Code § 832.7 is unavailing. In federal question cases, including § 1983 actions, federal common law governs claims of privilege. *See Soto*, 162 F.R.D. at 613 (holding that federal common law governs discovery in federal civil rights cases); *In re Google RTB Cons. Priv. Litig.*, 2024 WL 3642191, at \*1 (N.D. Cal. Aug. 1, 2024) ("As this action is premised on federal question jurisdiction, federal common law governs issues of privilege."). Although California Penal Code § 832.7 and its policy rationale may be considered, that statute does not supply an independent privilege in federal question cases, and where state law conflicts with federal common law, the latter governs. *See, e.g.*, *Molex v. City & Cnty. of San Francisco*, 2012 WL 1831640, at \*1 (N.D. Cal. May 18, 2012) ("In federal question cases, privileges are determined under federal law. But where federal law is unsettled, federal courts may resort to state law analogies for the development of a federal common law of privileges. State law privileges are not controlling in federal question cases."); *City of Rialto v. U.S. Dep't of Defense*, 492 F. Supp. 2d 1193, 1196 n.3 (C.D. Cal. 2007) ("State privilege doctrine whether derived from statutes or court decisions, is not binding on federal courts . . . . However, when state privilege law is not inconsistent with federal privilege law, federal courts may look to state law for guidance.") (citation omitted); *Dillon v. City & Cnty. of S.F.*, 748 F. Supp. 722, 725 n.2 (declining to weigh state privilege law where federal case involved only "a Federal constitutional claim, and federal and state law may be in conflict").

California Penal Code § 832.7 conflicts with federal common law in key ways. While § 832.7 imposes strict limits and a procedural mechanism for the disclosure of officer personnel records, federal common law requires an individualized balancing of interests that is "moderately pre-weighted in favor of disclosure" and requires the privilege to be "formally asserted and delineated in order to be raised properly." *Randolph*, 2007 WL 4170093, at *1 (quoting *Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987); *see also Sanchez*, 936 F.2d at 1033–34. Further, before the Court can even consider whether the official information privilege applies, defendants seeking to invoke the privilege "must file a declaration or affidavit setting forth," among other pieces of information, a specific identification of the governmental or privacy interests that would be threatened by disclosure, a description of how disclosure subject to a protective order would create substantial risk of harm to significant governmental or privacy interests, and a projection of how much harm would be done. *Id.* at *1–2. Thus, the Court does not extend controlling weight to § 832.7.

With respect to the merits of the federal official information privilege, Defendants have submitted only conclusory statements in the Joint Discovery Letter Brief urging that the governmental and privacy interests outweigh the need for disclosure. Joint Discovery Letter Brief at 3 ("Personnel-related and internal investigative materials are protected under Penal Code section 832.7 and the federal official information privilege, which requires a balancing of interests and permits nondisclosure where the governmental and privacy interests outweigh the need for disclosure.") (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033–34 (9th Cir. 1990)). Defendants' assertions do not suffice. The official information privilege does not shield documents from discovery where Defendants' personnel records and documents related to prior instances of excessive force are directly relevant to Plaintiff's *Monell* liability claim against the City. *See Randolph*, 2007 WL 4170093, at *2; *see also Tillis v. LaMarque*, 2006 WL 1050153, at *2 (N.D. Cal. Apr. 20, 2006) (rejecting official information privilege argument where defendants failed to address in a specific manner how disclosure under a protective order would create any risk to governmental or privacy interests); *Green v. Baca*, 226 F.R.D. 624, 644 (C.D. Cal. 2005) ("In cases involving section 1983 claims, courts have repeatedly held that police personnel files

United States District Court
Northern District of California

and documents are relevant and discoverable."). In any event, the information — to the extent Defendants assert the official information privilege — may be produced under protective order (at least temporarily) to minimize any potential injury to the government's interests.

With respect to Defendants' overbreadth argument, the Court finds Plaintiff's core requests to be relevant and not overbroad, at least with respect to requests for training materials, early warning and use-of-force data, and policy and *Monell*-related documents for the involved officers. The *Monell* claim in the FAC is grounded in an alleged pattern of excessive force, failure to discipline, failure to train, and ratification of unconstitutional conduct by City officials. Discovery of prior complaints and internal affairs records is well-established practice in Section 1983 actions premised on these theories, so long as these records bear on incidents of use of force similar in character to the conduct alleged in this action — *i.e.*, excessive or disproportionate force during stops, including but not limited to forcible removal from vehicles, ground takedowns, and use of force against non-resisting or minimally-resisting individuals.

For the foregoing reasons, the Court directs Defendants to provide supplemental responses to Plaintiff's RFPs, compliant with Rule 34(b)(2)(B)–(C) and Standing Order § 2(a). Any withholding must comply with this Order, and Defendants' responses shall specify what Defendants will produce and the specific basis for any withholding. The burden rests with Defendants to articulate a particularized explanation for any record withheld.

Defendants are ordered to produce: (1) training materials on use of force, de-escalation, duty to intervene, vehicle extractions, and ground takedowns for the officers involved in the incident and as maintained by the Department generally; (2) use-of-force statistical data and early warning system records for Officers Salala and Charles; (3) departmental policies, written procedures, and *Monell*-related documents reflecting the City's knowledge, training, and supervision practices relevant to excessive force during stops; (4) complaint records and internal affairs materials, whether or not they resulted in sustained findings, concerning use of force by Officers Salala, Charles, Castillo, and Remick for the five-year period preceding the incident; (5) complaint records and internal affairs materials concerning other RPD officers for the five-year period preceding the incident, limited to incidents involving excessive or disproportionate force

United States District Court
Northern District of California

8

during stops of a character comparable to that alleged in the FAC.   The Court declines at this stage to order production of case files pertaining to prone restraint deaths or discovery as to Sergeant Jenkins or Chief Magnus beyond the categories described above.  Plaintiff may renew those requests with a more particularized showing.  Discovery as to Jerry Threet is limited to records bearing on his role with CPRC and the Commission's handling of complaints alleging use-of-force during stops.  To the extent Plaintiff's RFPs seek materials not addressed by this Order, the parties shall meet and confer and may file supplemental letter briefs pursuant to the Court's Standing Order addressing any remaining specific disputes.

B.      Dispute #2: Instruction Not to Answer at Salala Deposition

At Officer Salala's deposition, defense counsel instructed Officer Salala not to answer two categories of questions: (1) why he is no longer employed by RPD, and (2) the circumstances of a March 17, 2024 incident involving Salala and a canine.  Defense counsel claimed that the instruction not to answer was proper because no court order was in place for personnel file information, and because post-incident events are irrelevant to Section 1983 claims or *Monell* liability.  Hardin contends that the instruction was improper and seeks an order compelling a continued deposition.

Defendant's instruction not to answer was improper.  Federal Rule of Civil Procedure 30(c) and the Court's Standing Order § 3(e) permit an instruction not to answer *only* to preserve privilege or enforce a Court-ordered limitation.  According to the parties' Letter Brief, defense counsel did not appear to invoke a specific privilege, and the absence of a prior court order is not a recognized ground for not answering questions at a deposition.  *See* Joint Discovery Letter Brief. Defendants now invoke the federal official information privilege.

For the reasons set forth above, federal official information privilege does not permit the non-disclosure of relevant information in this action and, in any event, defense counsel failed to invoke this privilege at the time of the deposition.  Questions related to why Officer Salala is no longer employed by RPD are relevant to his credibility as a witness and to the circumstances of his departure from the Department.  The March 17, 2024 canine incident, however, is substantively different.  That incident involved factually distinct conduct bearing no apparent similarity to the

United States District Court
Northern District of California

United States District Court
Northern District of California

force alleged in this action. The Court is not persuaded, on the record before it, that the canine incident bears a sufficient nexus to the claims here to warrant reopening the deposition as to that subject. Discovery into the canine incident is therefore denied at this stage.

Accordingly, the Court directs Officer Salala to appear for a continued deposition for the limited purpose of answering the question of why he is no longer employed by RPD, which defense counsel improperly blocked at the original deposition. The continued deposition shall not be used to pursue lines of questioning not raised at the original deposition or about the March 17, 2024 canine incident, which falls outside the scope of discovery.

### III.    CONCLUSION

For the foregoing reasons, Defendants are ordered to provide supplemental responses to Hardin's RFPs and to produce: (1) training materials on use of force, de-escalation, duty to intervene, vehicle extractions, and ground takedowns for the officers involved in the incident and as maintained by the Department generally; (2) use-of-force statistical data and early warning system records for Officers Salala and Charles; (3) departmental policies, written procedures, and *Monell*-related documents reflecting the City's knowledge, training, and supervision practices relevant to excessive force during stops; (4) complaint records and internal affairs materials, whether or not they resulted in sustained findings, concerning use of force by Officers Salala, Charles, Castillo, and Remick for the five-year period preceding the incident; (5) complaint records and internal affairs materials concerning other RPD officers for the five-year period preceding the incident, limited to incidents involving excessive or disproportionate force during stops of a character comparable to that alleged in the FAC. Discovery as to Jerry Threet is limited to records bearing on his role with the CPRC and the Commission's handling of complaints or investigations involving use of force during stops like that alleged in this action.

Further, Officer Salala shall appear for a continued deposition and answer questions concerning the circumstances of his departure from RPD. The continued deposition shall not be used to pursue lines of questioning not raised at the original deposition, and the March 17, 2024 canine incident remains outside the scope of the deposition at this stage.

///

10

**IT IS SO ORDERED**.

Dated: May 13, 2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California